**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DORIAN DUKES<br>JASON PIZZONIA<br>RONNIE KASSEL<br>ALEXANDR SHNICER<br>AVERIL BURKE-ST. MARTHE,<br><br>               Plaintiffs,<br><br>    v.<br><br>CITY OF NEW YORK and the NEW YORK<br>CITY POLICE DEPARTMENT,<br><br>               Defendants. | Case No. _____<br><br>**COMPLAINT**<br><br>(Jury Trial Demanded) |

## COMPLAINT

Plaintiffs, by and through their counsel, the law firms of McGillivary Steele Elkin LLP and Spivak Lipton LLP, for their Complaint against the City of New York ("City") and the New York City Police Department ("NYPD") state as follows:

## INTRODUCTION

1. Plaintiffs are current and former employees of the Defendants, City of New York and the New York City Police Department, in the position of Motor Vehicle Supervisor ("MVS"). Plaintiffs bring this action against Defendants for back pay, liquidated damages, attorneys' fees and costs, and other relief pursuant to 29 U.S.C. § 207, 29 U.S.C. § 216(b), and 28 U.S.C. § 1331, to remedy the Defendants' willful and unlawful violations of federal law complained of herein.

2. Plaintiffs bring this action against Defendants in accordance with 29 U.S.C. § 216(b) of the Fair Labor Standards Act (FLSA) because of Defendants' unlawful deprivation of Plaintiffs' right to overtime compensation in accordance with the FLSA. The Plaintiffs have been

subject to the same policies and/or practices that violate the FLSA whereby the Defendants suffered or permitted Plaintiffs to perform uncompensated overtime work before their paid shifts, during their unpaid meal periods, and after their paid shifts. Plaintiffs also have been subject to the same policies and/or practices that violate the FLSA whereby the Defendants fail to properly calculate the regular rate of pay upon which Plaintiffs' overtime rate is based.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## PARTIES

5. All Plaintiffs have given their written consent to be Party-Plaintiffs in this action pursuant to 29 U.S.C. § 216(b).

6. Each of the Plaintiffs in this action, while employed by Defendants, has been an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

7. Defendant City of New York is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency and "employer" within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). The City of New York has a principal office and place of business located at Broadway and Park Row, New York, New York, 10007, and may be served with process by serving the Office of Corporation Counsel, 100 Church Street, New York, 10007.

8. Defendant New York City Police Department is an administrative division of the City of New York and is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency within the meaning of Section

2

3(x) of the FLSA, 29 U.S.C. § 203(x). The NYPD's principal office is located at One Police Plaza, New York, NY 10007.

**FACTS**

9.     Plaintiffs are, and have been at all times material, employed by Defendants in the positions of Motor Vehicle Supervisor or Senior Motor Vehicle Supervisor (collectively, "MVS") at the NYPD.

10.     For example, at all times material, Plaintiffs Dorian Dukes and Jason Pizzonia have worked for Defendants in the position of MVS. At all relevant times, all NYPD MVSs, including Plaintiffs Dukes and Pizzonia, have been assigned to the Central Repair Shop ("CRS") on 58th Street in Woodside, Queens.

11.     Within the last three years and continuing to date, while working in the position of MVS on behalf of Defendants, Plaintiffs' job duties include but are not limited to: dispatching Motor Vehicle Operators (MVOs) to towing and transporting jobs; maintaining trucks and dispatched vehicles; preparing paperwork for accident reports; and creating work orders.

12.     While working as an MVS at NYPD, Plaintiffs are regularly scheduled to work 40 hours a week. Specifically, Plaintiffs are scheduled to work at least five shifts of eight and one-half hour shifts with a one-half hour uncompensated meal period each week. However, Plaintiffs routinely work hours in addition to their regularly scheduled 40 hour shifts such that they routinely work over 40 hours in a workweek. On such occasions, Defendants fail to compensate Plaintiffs for all hours worked in excess of 40 in a workweek at a rate of one and one-half times their regular rate of pay. Specifically, Defendants fail to compensate Plaintiffs for hours worked before the start of their scheduled shifts, after the end of their scheduled shifts, and work performed during their 30-minute unpaid meal periods.

13. While working as an MVS for Defendants, Plaintiffs may be compensated for hours worked over 40 in a workweek but only *if* the overtime hours were pre-approved by Defendants. However, even when Defendants compensate Plaintiffs and all others similarly situated for overtime hours that were pre-approved, Defendants systemically fail to pay Plaintiffs for this overtime work at the correct regular rate of pay. Defendants also fail to pay Plaintiffs for this overtime in a timely fashion, regularly paying them weeks after the overtime has been worked and after the Plaintiffs' regular pay day.

### *Defendants' Fair Labor Standards Act Violations are Willful*

14. Defendants capture the work hours of MVSs, including time spent working before their scheduled shift begins and/or after the end of their scheduled shifts, on the Defendants' electronic timekeeping system, "CityTime," which is maintained and accessible at Plaintiffs' work location. However, CityTime automatically deducts one-half hour each day for Plaintiffs' uncompensated meal periods regardless of whether the Plaintiffs work through all or part of their uncompensated meal period.

15. CityTime tracks all Plaintiffs' work time on a minute-by-minute basis including their pre-shift and post-shift work time. However, Defendants do not pay the MVSs on a minute-by-minute basis. This is because when the City of New York programmed and implemented CityTime, it chose to utilize a "pay-to-schedule" system (i.e., one that, by default, pays employees for their scheduled work hours) rather than a "pay-to-punch" system (i.e., one that, by default, pays employees for all the time between punch in and punch out). As such, although all minutes of Plaintiffs' pre-shift and post-shift work time is captured in CityTime and reviewed on a weekly basis by Plaintiffs' supervisors, Plaintiffs are nevertheless only paid for their scheduled shift hours, and only for overtime hours for which they have received pre-approval.

4

16.     Defendants failed to conduct an audit or otherwise investigate any of the work minutes captured by CityTime as "uncompensated" time, including but not limited to what MVSs are doing during their recorded pre-shift or post-shift time.

17.     Plaintiffs' timekeeping and payroll data are in Defendants' exclusive possession and is not readily available to Plaintiffs. Plaintiffs' CityTime records and payroll data are not readily available to Plaintiffs and other MVSs because they are "maintained across various [agency] branches, not available for download or electronic transfer, not text-searchable, not maintained for more than two years, and requires a separate search for each pay period." *Murray, et al. v. City of New York*, No. 1:16-cv-08072-PKC, Dkt. 66 (S.D.N.Y. Oct. 18, 2017) at 3.

18.     The Defendants failed to seek advice from the U.S. Department of Labor regarding whether its pay policies and practices comply with the FLSA.

19.     The Defendants are well aware of their obligation to pay employees for overtime work which is suffered or permitted, even if employees do not make a request for overtime compensation for that work or if that time is not pre-approved by Plaintiffs' superiors. In fact, the former New York City Corporation Counsel has admitted, under oath, that it is an employer's responsibility to ensure that employees get paid for work about which the employer is aware. *See Perry v. City of New York*, Case No. 1:13-cv-1015 (S.D.N.Y.), Dkt. 181 (Trial Transcript of October 16, 2019) at 969-70. However, at all times relevant, Defendants have failed and continue to fail to compensate Plaintiffs for overtime work which is performed with their supervisors' knowledge and is recorded in the CityTime system.

20.     The City and the NYPD have been held liable for failing to pay for recorded pre-shift and post-shift work on multiple occasions yet have made no changes to the manner in which it records or compensates Plaintiffs for their overtime work. *See, e.g., Foster v. City of New York*,

2017 U.S. Dist. LEXIS 227758 (S.D.N.Y. Sept. 30, 2017) (granting summary judgment for plaintiff New York City employees on FLSA claims that they worked uncompensated overtime about which their managers were aware, despite required use of the CityTime system); *De La Cruz v. City of New York*, 2017 U.S. Dist. LEXIS 227758 (S.D.N.Y. Sept. 30, 2017) (same); *Perry v. City of N.Y.*, 1:13-cv-01015 (S.D.N.Y.) (jury verdict in favor of plaintiffs, $17,780,063 judgment entered); *Worley v. City of N.Y. and NYPD*, Case No. 17-cv-04337 (S.D.N.Y.) (granting summary judgment to plaintiffs for uncompensated pre-shift, post-shift, and meal period work about which the City was aware). *See also Perez v. City of New York*, 2017 U.S. Dist. LEXIS 159473 (S.D.N.Y. Sept. 27, 2017) (denying summary judgment to City on defense to FLSA liability based on claim that Associate Urban Park Rangers failed to "report" overtime on the CityTime system where "ample record evidence" demonstrated that the City knew or had reason to know plaintiffs were working unreported overtime hours).

21.    The City has previously been held liable for failure to properly calculate employees' regular rates of pay by failing to include premium payments, such as night shift differentials, in the rate at which overtime is paid to employees. *See, e.g.*, *Worley v. City of New York*, Case No. 17 Civ. 4337, 2020 WL 730326, Dkt. 204 (S.D.N.Y. Feb. 12, 2020); *Foster v. City of New York*, 2017 U.S. Dist. LEXIS 227758, Dkt. 153 (S.D.N.Y. Sept. 30, 2017); *De La Cruz v. City of New York*, 2017 U.S. Dist. LEXIS 227758, Dkt. 150 (S.D.N.Y. Sept. 30, 2017); *Lawtone-Bowles v. City of N.Y.*, 16-cv-04240, 2020 WL 2833366 (S.D.N.Y. Jun. 1, 2020); *Lynch v. City of New York*, 291 F. Supp. 3d 537 (S.D.N.Y. 2018). Despite these decisions, the City continues to fail to include premium payments in Plaintiffs' regular rates of pay.

22.    In June of 2023, individuals employed by Defendants in the position of MVS at NYPD, including but not limited to individuals who are Plaintiffs in this case, brought suit against

Defendants seeking compensation for pre-shift, post-shift, and meal period work in accordance with the FLSA. *See Kassel v. City of New York, et al.*, Case No. 1:23-cv-05211 (S.D.N.Y.). Since the filing of the *Kassel* lawsuit and in the time since it was resolved through settlement in January of 2024, Defendants have failed to take steps to bring their pay policies and practices with respect to MVS employees into compliance with the FLSA.

### *Uncompensated Work Performed by Plaintiffs*

23.     While working as MVSs at NYPD, Plaintiffs routinely work over 40 hours a week. Plaintiffs are scheduled for five shifts of eight hours and 30 minutes in length each week, 30 minutes of which are automatically deducted from each shift as an uncompensated meal period. Thus, Plaintiffs are scheduled to perform a minimum of 40 hours of work per workweek.

24.     Plaintiffs frequently work overtime in addition to their regular 40 hours of work per week that they spend performing their regular job duties for which they are not compensated. Specifically, they routinely work additional hours before the official start time of their regularly scheduled shifts, after the end of their regularly scheduled shifts, and during their unpaid meal periods, all without compensation. This pre-shift, post-shift and meal period work causes Plaintiffs to work in excess of 40 hours in each week because they are scheduled to work 40 hours per workweek even without this additional overtime. As such, Plaintiffs regularly work additional uncompensated hours that are in excess of 40 in a workweek.

25.     Plaintiffs begin work before the official start time of their shifts and stop working after the end of their official shifts. Such pre-shift and post-shift work includes, but is not limited to, the tasks listed in Paragraph 11. Plaintiffs are not compensated for this pre-shift or post-shift work time unless it has been pre-approved before it was worked.

26.     Plaintiffs perform work during some or all of their 30-minute unpaid meal periods performing their regular job duties (i.e., the tasks listed in Paragraph 11), continuing to dispatch MVOs to towing and transport assignments and completing required paperwork. Plaintiffs are not compensated for this meal period work time.

27.     For example, Plaintiff Dukes routinely works over 40 hours in a workweek. When Plaintiff Dukes works over 40 hours, Defendants fail to compensate him for all of his work time, including but not limited to time spent performing the tasks enumerated in Paragraphs 11, 25, and 26 before the official start of this scheduled eight and one-half hour shift, and after the end of this eight and one-half hour scheduled shift, and during his unpaid 30-minute meal period. Specifically, when assigned to a scheduled shift of 2:00 pm to 10:30 pm, Plaintiff Dukes routinely arrives approximately 30 minutes prior to the start of his scheduled shift and begins performing work tasks enumerated in Paragraphs 11, 25, and 26. In addition, on these occasions, Plaintiff Dukes works through his meal period approximately four to five times per week, performing the duties listed in Paragraphs 11 and 26, such as continuing to dispatch MVOs. Thus, Plaintiff Dukes is not compensated for at least approximately four hours and 30 minutes of additional overtime work beyond his scheduled shift per week.

28.     For example, Plaintiff Pizzonia routinely works over 40 hours in a workweek. When Plaintiff Pizzonia works over 40 hours, Defendants fail to compensate him for all of his work time, including but not limited to time spent performing the tasks enumerated in Paragraphs 11, 25, and 26 before the official start of this scheduled eight and one-half hour shift, and after the end of this eight and one-half hour scheduled shift, and during his unpaid 30-minute meal period. Specifically, when assigned to a scheduled shift of 9:30 pm to 6:00 am, Plaintiff Pizzonia routinely arrives approximately 30 minutes prior to the start of his scheduled shift and begins performing

work tasks enumerated in Paragraphs 11, 25, and 26. In addition, on these occasions, Plaintiff Pizzonia works through his meal period approximately four to five times per week, performing the duties listed in Paragraphs 11 and 26, such as continuing to dispatch MVOs. Thus, Plaintiff Pizzonia is not compensated for at least approximately four hours and 30 minutes of additional overtime work beyond his scheduled shift per week.

29.     All MVSs employed by Defendants routinely work more than 40 hours in a workweek but are denied proper compensation for hours worked in excess of 40 because Defendants fail to compensate MVSs for pre-shift, post-shift, and meal period work. The amount of pre-shift and post-shift overtime work hours for which Plaintiffs have not been paid can be identified through the Defendants' timekeeping system and through other work and pay records.

30.     MVSs work in the same office as District Supervisors. The District Supervisors are the MVS's immediate supervisors. The District Supervisors are scheduled to work from approximately 5:30 am to 2:00 pm each day. Thus, when working during the day shift, MVSs interact with their immediate supervisors regularly because they are working side-by-side in the same office during the same core working hours. MVSs who work other shifts regularly interact with their immediate supervisors at the beginning and end of their shifts, when there is overlap with the scheduled shift of the District Supervisor. During these times of overlap between the shifts of the MVSs and the District Supervisors, the District Supervisors observe the MVSs performing work, including but not limited to the tasks enumerated in Paragraphs 11, 25, and 26, before the start of their scheduled shifts, during their unpaid meal breaks, and after their scheduled shifts.

31.     A written call log records and tracks all of the calls that the MVSs have to take throughout their shifts, including requests for dispatch. Also, there is a written record of when and where each MVO is dispatched by an MVS. Upon information and belief, these call logs and

dispatch records show that the MVSs routinely work performing the tasks enumerated in Paragraphs 11, 25, and 26 before the start of their scheduled shifts, during their unpaid meal breaks, and after the end of their scheduled shifts.

### *The Rate at Which Overtime is Paid to Plaintiffs*

32.     While working as MVSs during the last three years, Plaintiffs have received certain payments for their work, including but not limited to night shift differentials and vehicle differentials. These payments are made pursuant to Agency-wide policy, and/or collective bargaining agreements, and thus they are paid to Plaintiffs. However, Defendants fail to include these payments in the regular rate of pay at which overtime is paid for purposes of calculating overtime payments owed to Plaintiffs. Defendants fail to include these payments in the calculation of the regular rate of pay of Plaintiffs pursuant to a systematic, Agency-wide practice.

33.     MVSs are eligible to earn a night shift differential when they work regularly scheduled hours between 6:00 pm and 7:00 am. Thus, Plaintiffs earn night shift differential on at least some of their scheduled hours during every single one of their regular work shifts.

34.     For example, Plaintiffs Dukes and Pizzonia have earned vehicle differential and night shift differential while working as MVSs during weeks in which they also earned overtime compensation. In fact, Plaintiffs Dukes and Pizzonia earn night shift differential on every regular shift that they work as an MVS. However, Defendants failed to include the vehicle and night shift differentials in the regular rate of pay upon which Plaintiff Dukes' and Pizzonia's overtime rates are based during weeks in which he also earned overtime compensation.

35.     All MVSs employed by Defendants who receive these payments pursuant to Agency-wide policy and/or collective bargaining agreement routinely work more than 40 hours in a workweek but are denied proper compensation for hours worked in excess of 40 because Defendants continue to fail to include these payments in the regular rate of pay upon which the

10

Plaintiffs' overtime rate is based. The precise amount of improperly paid overtime received by each Plaintiff can be identified through the Defendants' timekeeping system and through other work and pay records, which are in the Defendants' exclusive custody and control.

### *Late Payment of Overtime Worked*

36.     In those instances in which Defendants have compensated Plaintiffs for working hours in excess of 40 hours a week, Defendants are required to "approve" requests for overtime compensation prior to paying Plaintiffs for that time. Due to delays in "approval" of overtime compensation by Defendants and their managers, or for other reasons that are unrelated to Defendants' ability to determine the amount of overtime compensation that is owed to the Plaintiffs, Defendants routinely pay Plaintiffs for their overtime work more than one pay period after the date that Plaintiffs have been paid for their non-overtime work hours for that week (i.e. more than two pay periods after the overtime was worked).

37.     Defendants have violated the basic principles of the FLSA by delaying Plaintiffs' overtime payments for working in excess of 40 hours a workweek by weeks, and in some cases months, with such delay not being reasonably necessary to compute Plaintiffs' overtime pay. The FLSA mandates that overtime compensation be paid on the regular payday for the period in which such workweek ends.

38.     While working as MVSs during the last three years, Plaintiffs worked pre-approved overtime hours for which they were not compensated in a timely fashion. Specifically, through no fault of the Plaintiffs, Defendants did not pay Plaintiffs for such pre-approved overtime until at least 30 days after the overtime was worked.

39.     All MVSs employed by Defendants routinely work more than 40 hours in a workweek but are routinely compensated for pre-approved overtime work in an untimely manner

(i.e., more than two pay periods after the overtime was worked). The precise amount of untimely paid overtime received by each MVS Plaintiff can be identified through the Defendants' timekeeping system and through other work and pay records.

## COUNT I

### FAILURE TO PAY OVERTIME FOR ALL HOURS PLAINTIFFS ARE SUFFERED OR PERMITTED TO WORK IN VIOLATION OF SECTION 7(a) OF THE FLSA, 29 U.S.C. § 207(a)

40.    Plaintiffs hereby incorporate by reference paragraphs 1 through 39 in their entirety and restate them herein.

41.    At all times material herein, during those workweeks in which Plaintiffs have worked hours in excess of 40 hours a week, they have performed work activities, including but not limited to when they are performing tasks enumerated in Paragraphs 11, 25 and 26, without compensation before the start of their shifts and after the end of their scheduled shifts, all of which is recorded on Defendants' timekeeping system. Plaintiffs also have performed work without compensation during their unpaid meal periods. This pre-shift, post-shift, and meal period work has caused Plaintiffs to work in excess of 40 hours in a given week without proper overtime compensation. Accordingly, as a result of these pay practices, Defendants have failed to provide Plaintiffs with the rights and protections provided under Section 7(a) of the FLSA, 29 U.S.C. § 207(a).

42.    Section 207 of the FLSA requires the payment of overtime compensation to employees who work in excess of the hourly standards set forth therein. In particular, Section 207(a) requires the payment of overtime compensation at the rate of one and one-half times each employee's regular rate of pay for all hours employees are suffered or permitted to work in excess of 40 hours per week. Defendants have failed to comply with the overtime pay requirements of the

FLSA by failing to compensate Plaintiffs for work that they have been suffered or permitted to work before the official start time of their shifts, after the end of their scheduled shifts, and during their uncompensated meal periods.

43.     As a result of Defendants' willful and purposeful violations of the FLSA, there have become due and owing to each of the Plaintiffs an amount that has not yet been precisely determined. The employment and work records for Plaintiffs are in the exclusive possession, custody and control of the Defendants and their public agencies, and Plaintiffs are unable to state at this time the exact amount owing to them, but, from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendants are under a duty imposed by the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to Plaintiffs from which the amount of Defendants' liability can be ascertained.

44.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs are entitled to recover liquidated damages in an amount equal to their backpay damages for the Defendants' failure to pay overtime compensation as alleged herein.

45.     Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT II

**FAILURE TO PROPERLY CALCULATE THE REGULAR RATE OF PAY FOR PLAINTIFFS IN VIOLATION OF SECTION 7 OF THE FLSA**

46.     Plaintiffs hereby incorporate by reference paragraphs 1 through 39 in their entirety and restate them herein.

47.     Section 207(a) of the FLSA, 29 U.S.C. § 207(a), as well as the regulations of the U.S. Department of Labor, 29 CFR Part 778, *et seq*., require that all forms of remuneration be included in the rate at which FLSA overtime is paid, with some limited exceptions and that

13

Plaintiffs be paid at the rate of one and one-half times an employee's regular rate for each hour of overtime worked in excess of forty hours a week. Defendants have failed to include certain premium payments such as night shift differential and vehicle differential pay in Plaintiffs' regular rates of pay for purposes of computing overtime pay entitlements of Plaintiffs, resulting in Defendants paying Plaintiffs for overtime work at a rate that is below the rate mandated by the FLSA. In addition, on occasion, Defendants pay Plaintiffs only straight time at Plaintiffs' hourly rates of pay for work in excess of forty hours a week rather than at the rate of one and one-half times Plaintiffs' regular rates of pay. Defendants' failure to include night shift differential and vehicle differential pay and other forms of additional compensation in Plaintiffs' regular rates of pay and Plaintiffs' occasional payment of straight time rather than time and one-half their regular rates of pay for overtime work violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.207(b).

48.    As a result of the Defendants' systemic, continuing, willful, and purposeful violations of the FLSA, there have become due and owing to each of the Plaintiffs an amount that has not yet been precisely determined. The employment and work records for Plaintiffs and all others similarly situated reflecting such ongoing violations are in the exclusive possession, custody and control of Defendants and their public agencies, and Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendants are under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to Plaintiffs from which the amount of Defendants' liability can be ascertained.

49.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs are entitled to recover liquidated damages in an amount equal to their backpay damages for the Defendants' failure to pay proper overtime compensation.

50.     Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT III

### FAILURE TO PAY FLSA OVERTIME IN A TIMELY MANNER BY PAYING FOR OVERTIME WEEKS OR MONTHS AFTER THE OVERTIME WAS WORKED

51.     Plaintiffs hereby incorporate by reference paragraphs 1 through 39 in their entirety and restate them herein.

52.     The FLSA mandates that overtime compensation be paid on the regular payday for the period in which such workweek ends. Overtime payments under the FLSA may not be delayed except as reasonably necessary to compute the amount owed, and in no event shall such payments be delayed beyond the next payday after such computation can be made. 29 C.F.R. § 778.106. Defendants have violated these basic principles by delaying Plaintiffs' overtime payments for working in excess for 40 hours a week and in some cases months, with such delay not being reasonably necessary to compute Plaintiffs' overtime pay, but rather because of a failure by management personnel to approve overtime payments or due to management withholding such payments until the next budgetary quarter.

53.     As this court recently recognized in *Accosta, et al. v. Lorelei Events Grp. Inc., et al.*, No. 7:17-cv-07804-NSR (S.D.N.Y. Jan. 21, 2022), "while 'the Second Circuit has no bright line rule for determining what qualifies as an 'unreasonable' amount of time for an employer to delay paying its employees,' several courts have held that it is a violation of the FLSA to withhold employees overtime such that 'two weeks is an unreasonable amount of time for an employer to delay a paycheck.'" (quoting *Coley v. Vannguard Urban Improvement Ass'n, Inc.*, No. 12-CV-

15

5565 (PKC), 2018 U.S. Dist. LEXIS 50787 (E.D.N.Y. Mar. 29, 2018)). Here, Defendants' failure to pay Plaintiffs FLSA overtime pay in a timely manner and their withholding of such overtime payments violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.106.

54.    As a result of the Defendants' systemic, continuing, willful, and purposeful violations of the FLSA, there have become due and owing to each of the Plaintiffs an amount that has not yet been precisely determined. The employment and payroll records for the Plaintiffs are in the exclusive possession, custody and control of Defendants and their public agencies, and Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendants are under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to Plaintiffs and other employees similarly situated from which the amount of Defendants' liability can be ascertained.

55.    Pursuant to 29 U.S.C. § 216(b), Plaintiffs are entitled to recover liquidated damages in an amount equal to their backpay damages for the Defendants' failure to pay overtime compensation as alleged herein.

56.    Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand that their claims be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court:

16

(a) Order a complete and accurate accounting of all the compensation to which the Plaintiffs are entitled;

(b) Award Plaintiffs monetary liquidated damages equal to their unpaid compensation;

(c) Award Plaintiffs interest on their unpaid compensation;

(d) Award Plaintiffs their reasonable attorneys' fees to be paid by the Defendants, and the costs and disbursements of this action; and

(e) Grant such other relief as may be just and proper.

DATE: July 21, 2026          Respectfully submitted,

                              /s/ Sarah M. Block
                              Gregory K. McGillivary
                              Sarah M. Block
                              McGILLIVARY STEELE ELKIN LLP
                              1101 Vermont Ave., N.W., Suite 1000
                              Washington, DC 20005
                              Phone: (202) 833-8855
                              gkm@mselaborlaw.com
                              smb@mselaborlaw.com

                              /s/ Hope Pordy
                              Hope Pordy
                              SPIVAK LIPTON, LLP
                              1040 Avenue of the Americas
                              20th Floor
                              New York, NY 10018
                              Phone: (212) 765-2100
                              hpordy@spivaklipton.com

                              *Counsel for Plaintiffs*